**McGRATH et al. v. WARE et al.**

No. 11805.

Circuit Court of Appeals, Fifth Circuit.

Dec. 6, 1946.

J. R. Ogle and Geo. A. Smoot, both of Wichita Falls, Tex., for appellants.

J. B. Dooley and W. W. Gibson, both of Amarillo, Tex., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Alleging fraud and overreaching on the part of executors of the will of their uncle, George D. Murphy, appellants brought this action to set aside and remove as a cloud on their title certain transfers of their interests in the estate to a son of their uncle; and, in the alternative, to recover the value of the estate. The trial was without a jury, and the judge found the facts for defendants and dismissed the action on its merits.

George D. Murphy, a resident of Texas, died in August, 1923, leaving a will which he had dictated to a public stenographer. He was not a lawyer and was not trained in the law. By his will he bequeathed to his son, Herbert Murphy, the net income in his estate for life. He provided that if Herbert should die leaving "a legal blood heir, or heirs," such "heir" or "heirs" would take one-half of the estate, and the nieces of the testator would receive the other one-half. In the event Herbert died without leaving "a legal blood heir or heirs," the entire estate was to go to the nieces. George D. Murphy was survived by fourteen nieces. His will was admitted to pro-

bate May 27, 1924, and an appraisement valuing his estate at $52,597.63 was filed and approved June 26, 1924. Charles T. Ware and Lon D. Marrs were named executors.

After his father's death, Herbert Murphy, who then had a life expectancy of thirty-five years, attempted to supplement his life estate by the purchase of the remainder interests of the fourteen nieces. Paying from $300.00 to $350.00 for each interest, Herbert succeeded in securing transfer conveyances from eleven of the nieces who lived far removed from the property and in different states.

Herbert Murphy died in October, 1932, without issue, and Charles T. Ware was named independent executor of his will and estate. Prior to Herbert's death the last report of the executors to the Probate Court showed the net worth of the estate of George D. Murphy as approximately $70,000.00.

After Herbert Murphy's death, Kathryn Crutchfield, Essie Boyd, and Elsie Griffin, the three nieces who had not sold to Herbert their interests in the estate of their uncle, began investigating the value and condition of their uncle's estate. They employed lawyers to investigate and advise them. They contacted Charles T. Ware who was then serving as executor of the estates of both Herbert Murphy and George D. Murphy. Ware offered to purchase their undivided one-fourteenth interests for Herbert's estate. After some bargaining, and with advice of counsel, these three nieces sold their interests to Herbert's estate for $2,750.00 each. They now seek to set aside these transfers, alleging fraud, overreaching, and breach of trust on the part of Ware.

■ Mrs. Crutchfield, Mrs. Griffin, and Mrs. Boyd were joined in the conveyances by their husbands. They were not misled by Ware or anyone else. They acted on their own initiative and with advice of counsel. Indeed their own testimony clearly shows that they did not act on anything Ware told them, but that they sold their interests after investigation at what they then thought was a good and adequate price. Finding that they might have re-ceived more for their interests had they waited until their uncle's estate was settled, they now seek to set aside their own conveyances on the ground of fraud and overreaching. The record does not support their claims.

After Mrs. Crutchfield, Mrs. Griffin, and Mrs. Boyd became convinced that they should have bargained for and received more money for their interests, they encouraged the other nieces here represented to join with them in attempting to set aside all the transfers. By depositions some of the other nieces declared that the executor, Marrs, had visited them at their homes in other states shortly after the death of their uncle in Texas. They claimed that Marrs advised them of the will, but painted a gloomy picture of the estate, and represented that expenses of administration would probably diminish the estate to such an extent that their interests might be worth little or nothing if Herbert, who held only a life interest, lived to a normal age. They had no idea that their respective interests might someday be worth from three to five thousand dollars. One of the nieces, Mrs. Parlee Keeling Hunt, testified that she had never seen Marrs, and further denied that she had executed the transfer conveyance which bore her signature. The evidence, however, shows that she did receive money for the transfer from Herbert and fully supports the trial judge's finding that she did in fact execute the questioned conveyance. As to the testimony of the other nieces explaining why they had executed transfers to Herbert, the trial judge as trier of the facts declined to believe their testimony and found for the defendants.

■ The nieces attempted to show that Lon D. Marrs, who died before this action was tried and before deposition was taken from him, had worked adversely to their interests and for the interest of Herbert Murphy; and that Marrs had purposely and for his own gain misled them and tried to get transfers from them to Herbert. A careful examination of all the evidence can, at most, raise only a suspicion that matters were not handled properly and that Marrs was working for the interest

of one beneficiary of the will and against the others when his duty as executor was to protect and safeguard all the beneficiaries. Suspicion, however, is not enough to support, much less demand, a finding of fraud and overreaching at this late date, approximately twenty years after the nieces had sold their interests, when recollections are dim and inaccurate and Marrs is dead and cannot raise his voice in defense or explanation.

While the actions of Marrs and Ware in handling the estate of George D. Murphy and dealing with other heirs for the benefit of Herbert's estate do not rise above criticism, it cannot be said on the record evidence that fraud and overreaching had been established and that the trial judge's findings are clearly erroneous. Decision must turn on the facts, and the findings of the trial judge in favor of the defendants and against the plaintiffs have substantial support in the record.

The judgment is affirmed.